Casey Nixon
Attorney at Law
3914 Barry Drive
Billings, MT 59105
(406) 548-7761
caseycnixon@gmail.com

Respondent *Pro Se*

FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: PR 20-0265

FILED

06/18/2020

Commission on Practice
of the Supreme Court
State of Montana

BEFORE THE COMMISSION ON PRACTICE OF THE

SUPREME COURT OF THE STATE OF MONTANA

* * * * * * * * * * * * *

IN THE MATTER OF CASEY NIXON,          )  Supreme Court No. PR 20-0265
                                       )
An Attorney at Law,                    )  ODC File Nos. 19-077 and 19-133
                                       )
Respondent.                            )  **CONDITIONAL ADMISSION AND**
                                       )  **AFFIDAVIT OF CONSENT**
                                       )
_____)

          STATE OF MONTANA             )
                                       :  ss.
          COUNTY OF YELLOWSTONE        )

CASEY NIXON, being first duly sworn upon oath deposes and affirms as follows.

1.     I am the respondent. I tender my conditional admission and make this affidavit of consent pursuant to Rule 26, Montana Rules for Lawyer Disciplinary Enforcement (2018), in exchange for the stated forms of discipline.

2.     I am a lawyer against whom a formal complaint has been filed alleging ethical misconduct. I am informed and aware of the allegations against me and understand that, if those allegations are proved by clear and convincing evidence, there exist grounds for discipline against me.

*CONDITIONAL ADMISSION AND AFFIDAVIT OF CONSENT* - Page 1

.08

3.    I present this affidavit of consent and my tendered admission to an Adjudicatory Panel of the Commission on Practice in exchange for the form of discipline described below. If the Commission on Practice approves my tendered admission, I acknowledge my tendered admission is subject to acceptance or rejection by the Montana Supreme Court. If my conditional admission is rejected by either the Commission on Practice or the Supreme Court, then I understand my admission shall be deemed withdrawn and cannot be used against me in this or any subsequent proceeding.

4.    My consent to discipline is freely and voluntarily tendered. I am not subject to coercion or duress of any kind. I am fully aware of the implications of submitting my conditional admission and affidavit of consent.

5.    Consistent with the foregoing, I admit the following facts are true. The allegations in Count 5 will be dismissed. Specifically, I admit:

A.    I was admitted to the practice of law in the State of Montana in 2012, at which time I took the oath required for admission, wherein I agreed to abide by the Rules of Professional Conduct, the Disciplinary Rules adopted by the Supreme Court, and the highest standards of honesty, justice and morality, including, but not limited to, those outlined in parts 3 and 4 of Chapter 61, Title 37, Montana Code Annotated.

**(ODC File No. 19-077 – Rose Matter)**

B.    In relation to ODC File No. 19-077, I admit to the following facts as outlined in Counts 1 through 4 of the Complaint ODC filed in Case No. PR 20-0265:

C.    Dwight Rose ("Dwight") and Eugene Rose ("Gene") were in a motor vehicle accident in August 2013. After unsuccessfully settling their claims with the at-

fault driver's insurance company, they hired me to represent them on a contingency fee basis. Written contingency fee agreements were provided to both Gene and Dwight. However, the agreement with Dwight was never signed or otherwise executed. Dwight and I did not have a written contingency fee agreement outlining the rate or basis of the fee or the scope of the representation; however, an agreement was provided to Dwight. The rate of the contingency fee was not made clear.

D. In July 2015, I filed a lawsuit against the at-fault driver in Yellowstone County District Court on Dwight and Gene's behalf. I collected $55 from Gene to cover the service fee, but the complaint unable to be served on the defendant.

E. In November 2017, I settled Gene's claim with the insurance company for $3,425 new money.

F. In March 2019, I received a letter and check in the amount of $124.95 from the insurance company on behalf of Dwight. I did not timely disburse these funds to Dwight.

G. In April 2019, I settled Dwight's case for $5,000 new money.

H. I failed to obtain either Dwight's or Gene's signatures on a settlement distribution sheet, communicating the way in which funds would be disbursed, and there consent thereof.

I. Dwight received a total of $2,765 of his $5,000 settlement. When calculating my fee, I erroneously calculated a 33% fee, rather than the agreed 30%. In doing so, I overpaid myself by a total of $79.16.

J. By my failure to explain and/or disclose the way in which the settlement funds were disbursed, I violated Rule 1.4, MRPC.

K. By my failure to have a written, signed contingency fee agreement with Dwight, I violated Rule 1.5(b), MRPC.

L. Upon receipt of the $124.95 check from the insurance company in March 2019, I immediately deposited the check into my IOLTA trust account. Within days, I transferred the money from my IOLTA trust account to my RMB personal checking account then immediately withdrew those funds.

M. Upon receipt of Gene's settlement funds, I deposited the $3,425 settlement check from the insurance company into my IOLTA trust account on November 20, 2017, wrote myself a check for $1,425, and withdrew the remaining $2,000, which I subsequently paid to Gene.

N. Upon receipt of Dwight's new money settlement funds, I deposited the $5,000 check into my IOLTA trust account on April 18, 2019, immediately transferred it to my RMB personal checking account, then withdrew it – all on the same day.

O. I wrote a check dated 5/16/19 payable to Dwight in the amount of $2,765 from my AFCU personal checking account. Although there were insufficient funds in my AFCU account to pay that amount, I had sufficient cash on hand to deposit, which is what I did. The check was negotiated on June 10, 2019.

P. In violation of Rules 1.15 and 1.18, MRPC, I failed to keep and maintain a record of the settlement distribution or a client ledger for Gene's settlement funds.

Q. In violation of Rules 1.15 and 1.18, MRPC, I failed to keep and maintain a record of the settlement distribution or a client ledger for Dwight's settlement funds.

R. I mishandled and misappropriated funds belonging to clients or others in violation of Rules 1.15 and 1.18, MRPC.

S. Beginning in April 2019, I experienced significant trauma and personal turmoil which distracted me from my work obligations. By letters and/or emails dated August 16, 2019, October 4, 2019, December 4, 2019, January 21, 2020, and several subsequent communications, ODC requested I respond to the allegations in Dwight's grievance and provide certain additional information and documents. Despite my promises to provide the requested information, I failed to do so in violation of Rule 8.1(b), MRPC. I acknowledge that my trauma and turmoil are not excuses for failure my to respond or produce the documentation.

**(ODC File No. 19-133 – Carey Matter)**

T. In relation to ODC File No. 19-133, I admit to the following facts as outlined in Counts 5 through 10 of the Complaint ODC filed in Case No. PR 20-0265:

U. On December 17, 2018, Nicholas Carey ("Carey") retained me and paid me $2,000 to assist him in a civil rights matter.

V. Throughout the following year, I failed to complete any legal services on Carey's behalf in violation of Rule 1.3, MRPC, and failed to reasonably communicate with Carey without initiation by Carey regarding his legal matter in violation of Rule 1.4, MRPC.

W. In Carey's grievance, he requested a refund of his retainer. I communicated to ODC that I intended to refund $1,500 to Carey, but I failed to do so.

//

//

X. By collecting a flat fee and failing to perform the services to the satisfaction and understanding of Carey, I charged an unreasonable fee in violation of Rule 1.5(a), MRPC.

Y. By failing to return property belonging to Carey, namely, his refund of his fee, I violated Rule 1.16(d), MRPC.

Z. Beginning in April 2019, I experienced significant trauma and personal turmoil which distracted me from my work obligations. Despite failing to complete the understood legal work for Carey, I did not safekeep and maintain Carey's retainer in my IOLTA trust account, failed to keep it separate from my own funds, and used his funds for my own purposes before they were earned in violation of Rules 1.15 and 1.18, MRPC.

AA. By letters dated December 6, 2019, and February 3, 2020, ODC requested I respond to the allegations against me in Carey's grievance. Despite multiple direct and attempted communications with me prior to February 4, 2020 and over the next two and one-half months, and despite my promises to provide my response and the requested information, I failed to do so in violation of Rule 8.1(b), MRPC. I acknowledge that my trauma and turmoil are not excuses for failure my to respond or produce the documentation.

6. I tender my admissions in exchange for the following:

    A. Indefinite Suspension, for a minimum of one (1) year;

    B. Payment of restitution to Dwight in the amount of $79.16;

    C. Payment of restitution to Carey in the amount of $1,500;

    D. Prior to reinstatement, I shall comply with the following conditions:

1) Meet all Continuing Legal Education requirements and pay any and all attorney license dues owing required to maintain an active license to practice law;

2) Undergo a chemical dependency evaluation by a licensed clinical addiction counselor and undergo a mental health evaluation by a licensed clinical psychiatrist or psychologist at my own expense and submit the evaluation reports to ODC;

3) Provide releases to allow ODC and my providers to discuss the reports and findings and my continued treatment progress; and,

4) Comply with Rules 30 and 32, MRLDE.

E. Upon reinstatement, I shall comply with the following conditions for a period of three (3) years:

1) Comply with all recommended treatment plans of my addiction counselor and my mental health care providers and continue treatment for mental health and/or chemical dependency issues pursuant to the recommended treatment plans;

2) Consult with Mike Larson, Lawyers' Assistance Program (LAP) Coordinator, and file with the ODC Mr. Larson's written recommendations for the means by which I can best address the emotional, mental health and chemical dependency issues I had been facing in order to allow me to effectively and ethically return to the practice of law;

3) Meet with Mr. Larson monthly by phone or in person and/or attend a LAP meeting held in the nearest city to me weekly or as often as the meetings take place;

4) Participate in ODC's Mentorship Program and complete the supervised task checklist;

5) Not engage in the solo practice of law without written approval of my mentor, my health care providers and ODC, and upon submitting written, adequate procedures relative to case management and adhering to those procedures; and

6) Obey all laws and Montana Rules of Professional Procedure; any violation of the MRPC or any federal or state law will constitute violation of a Court Order and will result in further discipline.

F. Payment of costs incurred by the Office of Disciplinary Counsel and the Commission on Practice in connection with this matter.

RESPECTFULLY SUBMITTED this ___18___ day of June, 2020.

_____
Casey Nixon, Respondent *Pro Se*

SUBSCRIBED AND SWORN TO before me this ___18th___ day of ___May___, 2020.



SHELBY LYNETTE STREIB
NOTARY PUBLIC for the
State of Montana
Residing at Boulder, Montana
My Commission Expires
May 18, 2024

_____

*CONDITIONAL ADMISSION AND AFFIDAVIT OF CONSENT* - Page 8